

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMILY SMITH, | ) |
| Plaintiff, | ) ) ) ) Wayne R. Andersen |
| v. | ) District Judge ) |
| CHICAGO SUN-TIMES, INC., | ) Case No. 06 C 6142 ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant Chicago Sun-Times's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Plaintiff Emily Smith sued defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* claiming that defendant discriminated against her on the basis of sex due to her pregnancy. The issue before the court is whether plaintiff was an independent contractor or an employee of defendant. Because the court finds that the plaintiff is an independent contractor, the motion for summary judgment is granted.

### BACKGROUND

Plaintiff Smith is the sole owner and operator of Kleppe Distribution, Inc., ("Kleppe") which was incorporated in Illinois in 1988. Defendant is a newspaper company also based in Illinois. In March of 2001, plaintiff began a training program with defendant, and then in November of the same year signed a document entitled "Independent Delivery Contractor Agreement" on behalf of herself as "contractor" and on behalf of Kleppe. Per this agreement,

plaintiff was responsible for the distribution of defendant's newspapers for a specific area from roughly November, 2001 until January, 2005.

Plaintiff conducted her business out of a Sun-Times facility located at 3135 MacArthur Boulevard, Northbrook, Illinois, for which she may or may not have paid $250 in rent. Also present at that facility was defendant's employee and regional manager, Paul Jimenez. Plaintiff claims that Jimenez was her supervisor, while defendant claims he was a Sun-Times representative and contact person for Kleppe.

Plaintiff was not directly paid by defendant but was rather issued a pay check and W-2 by her company, Kleppe. Kleppe was in turn paid lump sums by defendant. At no time did defendant provide employee benefits or pay taxes for plaintiff.

Throughout the course of her business relationship with defendant, plaintiff was responsible for the distribution of newspapers to a wide area, and her company, Kleppe, had roughly 30 subcontractors who assisted in distribution. Defendant, through its regional manager Paul Jimenez, suggested potential subcontractors to plaintiff. Plaintiff, however, had at least some, if not all, of the power to hire and fire these individuals. For example, in an October 2004, letter plaintiff wrote about choosing not to hire an individual brought in at the request of Paul Jimenez because she "had no work available for him."

In January of 2005, defendant informed plaintiff via letter that "Chicago Sun-Times will be terminating its contract with Kleppe Distribution [and] assuming its responsibilities as of January 31, 2005." Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") on

May 27, 2005. The EEOC issued a dismissal and Notice of Suit Rights Letter on August 8, 2006, and the present action was filed on November 9, 2006.

Both parties agree that the dispositive issue for this motion is whether plaintiff was an independent contractor or an employee of defendant. Plaintiff contends that from November 2001 until January 2005, she was a manager and de facto employee for defendant. She claims that despite the nomenclature used by defendant in their agreement which referred to her as an independent contractor, the economic realities of their relationship demonstrate her employee status. Defendant insists that in action and word she was always an independent contractor.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. FED R. CIV. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in the light

3

most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

## ANALYSIS

To maintain a cause of action under Title VII, a plaintiff must prove the existence of an employment relationship. *Knight v United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991). Independent contractors are not protected by Title VII. *Id.* In determining whether a business relationship is one of employee-employer or independent contractor, the Seventh Circuit looks to the "economic realities" of the work relationship, rather than just the label given to parties. *Id.* The economic reality is determined by applying a five-factor test. Those factors are (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations. See *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir. 1996).

### A. *Extent of Defendant's Control and Supervision Over Plaintiff*

This first factor raises the issue of the extent of control defendant had over plaintiff. Of the five factors, this is the one given the most weight. If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist. *Ost*, 88

4

F.3d at 439; *see also Alexander*, 101 F.3d at 492-93. The type of control required to establish an employment relationship is "the discretionary control an employer daily exercises over its employee's conduct." *EEOC v. North Knox School Corp.*, 154 F.3d 744, 748 (7th Cir. 1998).

In the course of fulfilling her contract obligations, plaintiff was given a list of customers which both parties agree were not her customers, but defendant's. Moreover, as defendant points out, merely providing a list of customers is not in itself indicative of exercising control. Many independent contractors provide services to clients which are not their own. In the construction industry, for example, nearly all independent contractors are working for the general contractors' clients, rather than their own. Similarly, the Seventh Circuit has held that limousine drivers assigned to service defendant's customers were independent contractors. *See Ost*, 88 F.3d at 438. While plaintiff was given a list of customers, she was free to deliver the papers in any order which she chose, and presumably by any means so long as the contract obligations were met.

Plaintiff also claims that because she could not choose which days to work that defendant controlled her daily activities. However, "there is nothing significant...in [defendant] requiring as a term of the contract that a driver begin his route at certain times." *North Knox*, 154 F.3d at 748. Just because defendant required plaintiff to work on certain days does not tilt the scales in plaintiff's direction, especially considering the nature of the enterprise.

Plaintiff claims that she had a limited right to hire and fire the drivers who actually distributed the papers, and no more or less than any other employee supervisor. At various times, she was directed to hire or terminate a driver at the direction of Paul Jimenez. However, plaintiff's own testimony states that these drivers were subcontractors. This is supported by the fact that they were not paid or issued 1099s by defendant, but rather by Kleppe. Plaintiff also

stated in her deposition that she was the only one who could engage people on behalf of Kleppe, and that on at least one occasion she chose not to hire a person put forward by Jimenez. Thus, contrary to the affidavit, the power to hire and fire was largely, if not exclusively in the hands of plaintiff.

Finally, plaintiff was free to, and in fact did distribute papers for competitors of defendant. These include the Korean Times and Pioneer Press. Because of the above mentioned reasons, the Court finds that the "extent of control" factor weighs in favor of plaintiff being an independent contractor.

### B. The Kind of Occupation and Nature of Skill Required

In evaluating the second factor, courts look to whether a position requires special skills. *Romano v. HWCC Development Corp.*, No. 97 c 1344, 1998 WL 526569, at *5 (N.D. Ill. Aug. 17, 1998). A determination that a position does not require special skills weighs in favor of finding an employee/employer relationship. *Id.* An employee/employer relationship is presumed where an employer provides training for its employees in order for them to obtain the special skills required by the position. *Id.* In the present case, plaintiff was given nearly a year of training by defendant before being assigned a delivery area. While defendant makes the relevant point that plaintiff owned and operated Kleppe for more than a decade before contracting to work for defendant, this is not enough to overcome the presumption of the employee/employer relationship when training is provided.

### C. Responsibility for the Costs of Operation

The third factor involves an examination of which party bore responsibility for the costs of operation, such as equipment, supplies, fees, licenses, and the overall workplace. *Alexander*,

101 F.3d at 492. Plaintiff states that she paid no rent for the office in which she worked. Contrary to this, she stated under oath in her deposition that she paid defendant rent and a portion of the heat and electricity for the space she used. Additionally, she states that she paid for her own gasoline, accounting, insurance, office supplies, etc., but that she was reimbursed by defendant. However, the record shows that she was never personally reimbursed for any costs, but rather submitted invoices on behalf of Kleppe to defendant.

### D. Method and Form of Payment and Benefits

An independent contractor relationship can exist even if the plaintiff was given no benefits, taxes were not withheld from the plaintiff's pay check, and the plaintiff did not list the employer on his tax return. *See Aberman v J. Aboucher & Sons, Inc.*, No. 95 C 5423, 1997 WL 51601, at *2-3 (N.D. Ill. Feb. 4, 1997); *see also Jones v. Seko Messenger, Inc.*, 955 F. Supp. at 934 (N.D. Ill. 1997) (finding that defendant's method of payment to plaintiff "conclusively established [plaintiff's] status as an independent contractor.") Here, the plaintiff admits she did not receive any benefits but claims that not providing benefits was "consistent with the purposes underlying the attempt by [defendant] to camouflage the true nature of the relationship." Whatever the motive of defendant, the fact remains that plaintiff was given no benefits, taxes were not withheld by defendant, and no pay check was issued to plaintiff. Moreover, in paying her own taxes, plaintiff did not report herself as an employee of defendant.

### E. Length of Job Commitment and Expectations

Long-term, exclusive relationships are associated with employer/employee status. *See, e.g., Jones*, 955 F. Supp. at 934. Conversely, a relationship where the plaintiff is allowed to work for other companies is indicative of independent contractor status. *See, e.g., Alexander*, 101 F.3d

at 493. In the present case, the plaintiff and defendant entered into a series of one year agreements per the Contractor Agreement, which stated:

> This Agreement will have a term of one (1) year, beginning at midnight on the date this agreement is accepted and approved by CST (The Chicago Sun-Times). This Agreement will automatically renew for an additional one year term on each anniversary thereof unless either party sends written notice of termination to the other party at least thirty (30) days prior to the end of the current term.

Plaintiff points out an apparent inconsistency in the contract due to the fact that the agreement also had a thirty day notice of cancellation provision which could be exercised at any time. Plaintiff offers this as evidence of defendant camouflaging the real nature of its relationship with is distributors. Plaintiff, however, states that "it was contemplated by the parties that the relationship would be long term and *that it would be exclusive*." Her deposition shows that the relationship was not exclusive, however, and that her company distributed papers for defendant's competitors.

Plaintiff contends that, because the contract was renewed several times over three years, it was long-term. In the Seventh Circuit, even multiple four-year renewable terms may not amount to finding in favor of an employee/employer relationship. *North Knox*, 154 F.3d at 750-51. In this case, we believe several one-year renewable contracts that contain thirty day notice of cancellation clauses fall short of creating a degree of expectation which would make plaintiff an employee of defendant.

## CONCLUSION

After analyzing each of factors set out in the Seventh Circuit's test for determining the "economic realities" of an employment relationship, the court finds that plaintiff was an independent contractor and not an employee of defendant.

For the foregoing reasons, defendant's motion for summary judgment [16] is granted. It is so ordered.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: August 6, 2007